# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3849 | **DATE** | August 28, 2002 |
| **CASE TITLE** | Rothbart Realty Co. v. National Paintball Supply, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum and Opinion Order, the Defendant's motion to dismiss [5-1] is DENIED.
(11) ■ [For further detail see attached memorandum and opinion order.]

| X | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 30 2002 | 9 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| mds(lc) | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROTHBART REALTY COMPANY, as agent for the beneficiaries of Cole Taylor Bank, as trustee under Trust No. 95-4069<br><br>      Plaintiff,<br><br>v.<br><br>NATIONAL PAINTBALL SUPPLY, INC., a Delaware corporation, successor in interest to Diablo Direct, L.L.C.,<br><br>      Defendant. | No. 02 C 3849<br><br>HONORABLE DAVID H. COAR<br><br>DOCKETED<br>AUG 3 0 2002 |

## MEMORANDUM OPINION AND ORDER

Rothbart Realty Company ("Rothbart") sues National Paintball Supply, Inc. ("National Paintball") for breach of two commercial lease agreements. Rothbart alleges that, although the parties executed a Termination of Lease Agreement for the two leases, National Paintball did not perform all of the conditions of the agreement, thereby it did not effectuate termination of the commercial leases. National Paintball moves to dismiss Rothbart's complaint against it, pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, this Court denies National Paintball's motion to dismiss.

### Background

On November 18, 1998, Rothbart, as agent for the beneficiaries of Cole Taylor Bank (trustee under Trust No. 95-4069) ("Landlord #1"), executed a lease for commercial space at 956 Northpoint Blvd. in Waukegan, Illinois (the "956 Lease") with Diablo Direct, L.L.C.

-1-

("Diablo") as lessee. On July 28, 1999, Rothbart, again on behalf of Landlord #1, executed a second lease with Diablo for nearby commercial space at 960 Northpoint Blvd. (the "960 Lease"). Both leases initially provided for a termination date of January 31, 2002. On October 12, 2001, however, Rothbart and Diablo executed an agreement that extended both the 956 and 960 Leases until January 31, 2005 (the "Extension Agreement").

National Paintball acquired Diablo and assumed all of Diablo's obligations under the 956 and 960 Leases and the Extension Agreement (the "Lease Assignment"). National Paintball notified Rothbart of its desire to relocate to a larger facility. Rothbart, a member of the limited liability company that owned the premises at 959 Northpoint Blvd. in Waukegan, Illinois ("959 Premises"), negotiated and approved a new lease for the 959 Premises with National Paintball dated April 4, 2002. Also on April 4, 2002, Rothbart and National Paintball executed an agreement to terminate the 956 and 960 Leases (the "Termination Agreement"). According to the Complaint, Rothbart and National Paintball agreed to terminate the 956 and 960 Leases upon the following conditions: (1) that Rothbart and National Paintball execute the 959 Lease; (2) that National Paintball vacate the 956 and 960 premises; (3) that National Paintball pay a Lease Termination Fee; and (4) that Rothbart and National Paintball execute a Lease Termination Agreement.

The actual Termination Agreement, however, does not expressly condition the Termination Agreement on National Paintball's execution of the 959 Lease. Rather, referring to the 956 Lease, the 960 Lease, the Extension Agreement, the Lease Assignment, and the Termination Agreement collectively as "REVISED LEASE," it provides:

2. As consideration for LANDLORD'S agreement to release ASSIGNEE from its obligations under the REVISED LEASE as provided herein, ASSIGNEE shall pay to LANDLORD a Forty Five Thousand ($45,000.000) [sic] Dollar Lease Termination Fee (hereinafter referred to as Lease Termination Fee). This Lease Termination Fee shall be paid to LANDLORD concurrent with the execution of this Termination Agreement. As part of this Lease Termination Fee payment, Assignee may deduct there from 50% of the aforementioned Security Deposit being Five Thousand Eight Hundred and Seventy ($5870.00) Dollars leaving a net amount due with the execution of this Termination Agreement of Thirty-Nine Thousand One Hundred and Thirty ($39,130.00) Dollars. This Termination Fee shall be used by LANDLORD to pay for any and all costs incurred by LANDLORD in order to re-lease the premises covered by LEASE956 and LEASE960 including, without limitation[,] brokerage and legal fees, rent credits, utilities, advertising costs, tenant improvements (carpeting/painting, etc.) or tenant alterations and any and all other customary charges incurred by LANDLORD for the re-leasing of office/warehouse premises. LANDLORD shall pay for the cost of closing the opening between premises 956 and 960. In the event LANDLORD'S total costs for the releasing of the premises are less than Forty Five Thousand ($45,000.00) Dollars, LANDLORD shall refund to Assignee, the difference, if any. In the even LANDLORD'S total costs for the releasing of the premises are in excess of Forty Five Thousand ($45,000.00) Dollars, no additional sum shall be due and owing from ASSIGNEE.

3. ASSIGNEE shall surrender and vacate possession of the premises covered by LEASE956 and LEASE960 to the LANDLORD in accordance with the provisions of the REVISED LEASE, on or before the Effective Date (May 15, 2002), as if the Effective Date was the original termination date of the REVISED LEASE. Upon termination, LANDLORD and ASSIGNEE shall be relieved of their obligations under the REVISED LEASE except for (a) those accruing prior to the EFFECTIVE DATE (b) those obligations which by their terms expressly survive the Termination Date and (c) any obligations arising under this Lease Termination Agreement. Within thirty (30) days after the EFFECTIVE DATE, LANDLORD shall finalized [sic] any amounts estimated to be due pursuant to this REVISED LEASE, and any additional amounts owed by ASSIGNEE to LANDLORD shall be immediately be [sic] paid to LANDLORD, and any amounts owed by LANDLORD to ASSIGNEE shall be immediately paid to ASSIGNEE.

The 959 Lease was signed by Landlord: 977 Northpoint Venture, L.L.C. ("Landlord #2"), but National Paintball never executed the lease.

## Discussion

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim for which relief may be granted, and the court likewise accepts as true all of plaintiff's well-pleaded factual allegations, and draws all reasonable inferences in the plaintiff's favor. Pickrel v. City of Springfield, 45 F.3d 1115 (7th Cir. 1995). A complaint should be dismissed where it appears beyond a doubt that plaintiff can prove no set of facts that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Mattice v. Mem. Hosp. of South Bend, Inc., 249 F.3d 682, 684 (7th Cir. 2001).

National Paintball moves to dismiss the complaint arguing that, executing the 959 Lease was not a condition contained within the four corners of the Termination Agreement and that it has fulfilled its obligations to terminate the 956 and 960 Leases; therefore, Rothbart has failed to state a claim upon which relief can be granted. Rothbart urges this Court to deny the motion to dismiss, arguing that the Termination Agreement was executed in the context of negotiations between Rothbart and National Paintball, it does not contain an integration clause, and that the 959 Lease was the pivotal document and a material part of the consideration for the Termination Agreement. Rothbart argues in the alternative that National Paintball is equitably estopped from asserting the Termination Agreement as a defense.

This Court finds that, at this stage of the proceedings, it does not appear beyond doubt that Rothbart cannot prove any facts that would support his claim for relief. On April 4, 2002, the parties negotiated two agreements--the Termination Agreement, which both parties signed, and the 959 Lease, which, for some reason, National Paintball did not sign. Because it is unclear

-4-

whether and to what extent the 959 Lease played a role in the execution of the Termination Agreement, this Court denies National Paintball's motion to dismiss.

## Conclusion

For the foregoing reasons, National Paintball's motion to dismiss is DENIED.

**Enter:**

*David H. Coar*

**David H. Coar**

**United States District Judge**

**Dated: August 28, 2002**